UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 12-40017 |
| Plaintiff, | |
| vs. | REPORT and RECOMMENDATION |
| EMMANUEL WILLIAM NYUON, | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is Defendant's Motion to Suppress Statements (Doc. 29). A hearing was held on November 8, 2012. Defendant was personally present and represented by his counsel of record, Mr. James Erinberg. The Government was represented by Assistant United States Attorney Mr. Kevin Koliner. Department of Homeland Security Special Agent Charla Aramayo testified at the hearing. Eight Exhibits were received into evidence during the hearing.[1] Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED.**

## JURISDICTION

Defendant is charged in a Superseding Indictment with Sex Trafficking of a Child and

---

[1] EX 2 is a DVD of the interview which is the subject of the pending motion. EX 2 is relevant to the issues raised by the pending motion.

EX 1 is an advice of rights form which was signed by Mr. Nyuon before a second interview which occurred on January 26, 2012–the day after the interview which is the subject of the pending motion. EX A-G are copies of the written reports, or portions thereof, which were prepared by the investigating agents. EX A was taken under advisement. It has been received. The relevance of all exhibits with the exception of EX 2 is generously described as tenuous.

Conspiracy to Engage in Sex Trafficking of a Child in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1591(b)(2), 1591(c), 1594(c) and 18 U.S.C. §§2(a) and 2(b). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

The Defendant, Emmanuel William Nyuon ("Nyuon") was arrested on the evening of January 25, 2012. He was transported to the Sioux Falls Police Department and placed in an interview room, where he was interviewed by Department of Homeland Security Special Agent Charla Aramayo and Sioux Falls Police Officer Brad Smidt. Before the interview began, Special Agent Aramayo read Nyuon his *Miranda* rights from the card in her wallet. Nyuon agreed to speak with the agents. The interview was video recorded and is depicted on EX 2. Nyuon asserts the statements he made to officers on the evening of January 25, 2012 and early morning hours of January 26, 2012 should be suppressed because he did not voluntarily waive his right to silence. The basis for Nyuon's assertion is twofold: (1) the *Miranda* warning he received before questioning was inadequate because it did not inform him of his right to stop questioning at any time; and (2) he was not informed at the outset of the interview about the subject of the questioning.

Although Special Agent Aramayo testified at the evidentiary hearing, she consistently referred to EX 2 as the most reliable source of information about the content of interview which forms the basis of this dispute. EX 2 has been viewed in its entirety by the Court. It reveals that Nyuon was placed in the interview room at 21:14 hours (9:14 p.m.) on January 25, 2012. He was left alone for quite awhile. He sat at the table for a period of time, but at 9:47 p.m. he moved the furniture around so he could lie on the floor and take a nap. He napped on the floor until Agent Aramayo and Officer Smidt entered the room at 10:33 p.m. Upon entering the room, Agent Aramayo visited briefly with Nyuon and confirmed he spoke English. She informed Nyuon he was under arrest for a traffic warrant. She told him that because he was under arrest, she was obligated to read him his rights. Aramayo pulled a wallet from her pocket and read the *Miranda* rights from a card. The *Miranda* warning as read by Aramayo stated:

You have the right to remain silent.

2

Anything you say can be used against you in court.
You have the right to consult with an attorney and have one present with you during questioning.
If you cannot afford an attorney one will be appointed to represent you prior to any questioning.

After she read this *Miranda* warning, Aramayo asked Nyuon if he understood. He responded affirmatively. She asked if he was willing to waive his rights and speak with her and Officer Smidt. Again, Nyuon responded affirmatively. The interview began at 10:36 p.m. Nyuon acknowledged he knew the young woman who had been arrested for prostitution but denied involvement in sex trafficking. At 10:48 p.m. the agents decided to take a break to give Nyuon a chance to "think about" his denials. Nyuon asked and was allowed to use the restroom. Nyuon returned to the interview room at 10:51 and Nyuon received a soda he'd requested. At 10:58 Agent Aramayo and Officer Smidt returned to the interview room and resumed the interview. Aramayo's tone became more confrontational when she told Nyuon they'd read text messages which implicated him in the sex trafficking scheme. Although Nyuon admitted knowledge of prostitution, he continued to deny involvement.

At 11:11 p.m. Agent Aramayo and Officer Smidt again left Nyuon alone in the interview room. At 11:26 p.m., Nyuon again moved the furniture to facilitate a nap on the floor. The agents returned to the room at 11:34 and continued the interview until 12:26 a.m. on January 26. Nyuon offered information about other people whom he believed were involved in sex trafficking, but continued to deny his own involvement.[2] The agents concluded the interview and left the interview room at 12:26 a.m. on January 26, 2012. Shortly before the conclusion of the interview, Officer Smidt informed Nyuon that despite his denials and the information he'd provided, he would be charged with sex trafficking. At 12:33 a.m. on January 26, Nyuon was handcuffed and taken from the interview room.

---

[2]Nyuon admitted he knew the girl he'd dropped off at the hotel and that he knew she engaged in prostitution. He also admitted he knew of other girls engaged in prostitution and the identity of their pimp or pimps. He consistently denied, however that he was a pimp. Instead, he insisted that he merely occasionally gave a ride to a friend in need upon request.

3

## DISCUSSION

### Burden of Proof

The burden of proof is on the defendant who seeks to suppress evidence. *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976). The Government, however, bears the burden of proving under the particular facts and circumstances of any given case that a defendant's waiver of his *Miranda* rights was intentional, voluntary, knowing and intelligent. *United States v. Black Bear*, 422 F.3d 658, 663 (8th Cir. 2005). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Nyuon asserts his *Miranda* waiver was involuntary[3] because (1) the advisement was insufficient and (2) Agent Aramayo failed to properly inform him about the subject matter of the interview before it began. These assertions are discussed in turn.

### 1. The Sufficiency of the *Miranda* Advisement

Nyuon asserts Aramayo's *Miranda* advisement was insufficient because Aramayo failed to inform Nyuon that he could stop answering questions at any time. Any inquiry into the sufficiency of a *Miranda* warning must begin with the language of the *Miranda* case itself. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966) the United States Supreme Court stated:

> We hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right

---

[3]Nyuon's reason for asserting his statements were involuntary is unusual. "Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare... The appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *United States v. Astello*, 241 F.3d 965, 966-67 (8th Cir. 2001).

Nyuon does not, nor, in light of the video taped interview could he, argue that his will was overborne or his capacity for self-determination was critically impaired by any coercive or inappropriate actions of the agents. Instead, he asserts his statements were involuntary because the agents did not adhere to the dictates of *Miranda*.

4

> will be scrupulously honored, the following measures are required. *He must be warned prior to any questioning that he has the right to remain silent, that anything that he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning of he so desires.* Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Id.* 384 U.S. at 479, 86 S.Ct. at 1630 (emphasis added). "There are no magic words that automatically satisfy *Miranda*'s constitutional concerns." *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005) (citations omitted). The appropriate question is whether the warning that was given "reasonably conveyed" Nyuon's constitutional rights as required by *Miranda*. *Id.* The *Miranda* case itself "indicates that no talismanic incantation is required to satisfy its strictures . . . reviewing courts . . . need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *United States v. Caldwell*, 954 F.2d 496, 501-02 (8th Cir. 1992) (citations omitted, punctuation altered). The United States Supreme Court has, as recently as 2010, reiterated that

> *Miranda* prescribed the following four now familiar warnings: A suspect must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell*, 130 S.Ct. 1195, 1203, 175 L.Ed.2d 1009, (2010) (citations omitted, punctuation altered). "The four warnings *Miranda* requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed." *Id.* 130 S.Ct. at 1204. It is significant that in the forty-six years since the *Miranda* case was decided, the United States Supreme Court has not seen fit to fashion a fifth warning which requires a specific advisement of the right to discontinue questioning.

Cases have been found approving *Miranda* warnings which include a specific, separate

advisement of the right to discontinue questioning at any time.[4]

No cases have been found, however, and none have been cited by Nyuon which *require* a specific separate advisement of the right to discontinue questioning, nor have any cases been found which invalidate a *Miranda* warning based solely on the failure to include such a specific separate advisement. Nyuon directs the Court's attention to *United States v. Anthon*, 648 F.2d 669 (10th Cir. 1981), but that case did not invalidate the *Miranda* warning based upon the failure to advise that questioning could be stopped at any time. In fact, the Tenth Circuit stated "there is no express requirement to warn suspects of the right to terminate questioning. . ." *Id* at 673. The Court indicated, however, that the failure to do so is "an important factor to be considered in determining the voluntariness of any statements made." In *Anthon*, the *Miranda* warning was deemed inadequate because it did not include an explanation that the defendant's right to counsel included a right to *appointed* counsel if he could not afford counsel, and that he had a right to have counsel present during questioning. *Id.* at 672.

Conversely, Courts have refused to invalidate as defective *Miranda* warnings which lacked a specific admonition that the defendant may discontinue questioning at any time. *See United States v. Ellis*, 125 Fed. Appx. 691 (6th Cir. 2005); *United States v. Square*, 790 F.Supp.2d 626, 634 (2011) (citing cases); *State v. Nave*, 2012 WL 5199723 (Neb.) at *12 ("*Miranda* contains no language requiring such a warning, and other courts have rejected similar positions."). The *Miranda* warning Special Agent Aramayo read from the card in her wallet complied with the requirements set out by the United States Supreme Court in *Miranda v. Arizona*. Nyuon was clearly and concisely advised of his four basic *Miranda* rights: [1] to remain silent, [2] that anything he said could be used against him in a court of law, [3] his right to the assistance of counsel including during questioning, and [4] that if he could not afford counsel, counsel would be appointed for him, and that appointed counsel would be provided to him prior to any questioning. Aramayo's advisement "reasonably conveyed" Nyuon's constitutional rights as required by *Miranda*. *United States v. Caldwell*, 954 F.2d 496, 501-02 (8th Cir. 1992).

---

[4]*See e.g. United States v. Perez*, 2009 WL 363618 (D.S.D.) at *4.

## 2. Aramayo's Failure to Tell Nyuon He Would be Questioned about Sex Trafficking

Nyuon further argues his statements were involuntary because he was not advised about the subject matter of questioning before he waived his right to silence. Specifically, Agent Aramayo told Nyuon the reason he'd been arrested was for an outstanding warrant related to a traffic violation. After the *Miranda* warning and after Nyuon agreed to speak with the officers, however, Aramayo's questioning had nothing to do with a traffic violation. Aramayo immediately focused on Nyuon's activities related to sex trafficking. Nyuon asserts that because he was deceived about the reason given for the necessity of the *Miranda* warning, his waiver was involuntarily given.

Nyuon is not the first defendant to claim that his statement was rendered involuntary by a police officer's "bait and switch" tactic. In *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) the defendant (Spring) was arrested on charges of stolen firearms. He was advised of his *Miranda* rights and thereafter interviewed about a murder case in which he was also a suspect. He made an incriminating statement, but did not confess to the murder. Based on that statement, he was interviewed again on a later date (after having again been advised of his *Miranda* rights) but during the second interview he confessed to the murder. He moved to suppress the confession because it was obtained based upon the first incriminating statement which he asserted was the result of an invalid *Miranda* waiver. Spring, like Nyuon, asserted the *Miranda* waiver was invalid because he was not informed before the first interview about the subject matter of the interview. The United States Supreme Court rejected the argument, stating "[t]his Court has never held that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of *Miranda* rights, and we expressly decline to do so today." *Id.*, 479 U.S. at 576, 107 S.Ct. at 858. The Court added that Spring's assertion that his statement was "compelled" because he waived his right to silence before he knew the subject of the interview "strains the meaning of compulsion past the breaking point." *Id.*, 479 U.S. at 573, 107 S.Ct. at 857.

The Eighth Circuit has similarly refused to extend the meaning of a compelled statement. "An officer may change the topic of interrogation without notice because a suspect's awareness of

7

all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *United States v. Syslo*, 303 F.3d 860, 865-66 (8th Cir. 2002) (punctuation altered) *citing Colorado v. Spring*, 479 U.S. at 577, 107 S.Ct. at 851. That Aramayo did not tell Nyuon he would be questioned about sex trafficking before the January 25 interview began, therefore, did not render Nyuon's statements involuntary.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant Nyuon's Motion to Suppress Statements (Doc. 29) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 28 day of November, 2012.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk
By _____ Deputy
SEAL)