
UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 12-40017 |
| Plaintiff, | * | |
| vs. | * | REPORT and RECOMMENDATION |
| EMMANUEL WILLIAM NYUON, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is Defendant's Motion to Suppress Cell Phone Data (Doc. 102). A hearing was held on Thursday, February 28, 2012. Defendant was personally present and represented by his counsel of record, Mr. James Erinberg. The Government was represented by Assistant United States Attorney Mr. Jeff Clapper. Five witnesses testified at the hearing: (1) Sioux Falls Police Officer Cullen McClure; (2) Sioux Falls Police Detective Hector Soto; (3) Homeland Security Special Agent Charla Aramayo; (4) Homeland Security Special Agent Craig Scherer; and the Defendant, Mr. Emmanuel Nyuon. Several Exhibits were received into evidence.[1] Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

---

[1]The Court has *sua sponte* sealed EX A and B. EX A is a copy of the January 27, 2012 search warrant and supporting affidavit for the search of the cell phone which is the subject of the pending Motion. EX A also authorized the search of the two cell phones seized from the juvenile who was arrested as a result of the undercover prostitution investigation on January 25, 2012.

EX B is a printout of a portion of the information extracted from Nyuon's Blackberry phone. It contains text messages from and full contact information for, (among others), the juvenile arrested on January 25, 2012.

## JURISDICTION

Defendant is charged in a Second Superseding Indictment with Sex Trafficking of a Child, Conspiracy to Engage in Sex Trafficking of a Child, and Sex Trafficking by Force in violation of 18 U.S.C. §§ 1591, 1591(a)(1), 1591(a)(2), 1591(b)(2), 1591(c), 1594(c) and 18 U.S.C. §§2(a) and 2(b). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

The Defendant, Emmanuel William Nyuon ("Nyuon") was arrested on the evening of January 25, 2012. Several witnesses testified regarding the relevant events preceding and following Nyuon's arrest:

### 1. Cullen McClure

Officer McClure is an officer with the street crimes unit of the Sioux Falls Police Department. On January 25, 2012 he was involved in the undercover investigation regarding an under aged (fifteen year old) prostitute. Officer Brad Smidt was also involved in the investigation. On January 25, Officer Smidt made contact with the juvenile and made arrangements to meet at the Hampton Inn, room number 233 at 8:45 p.m. The arrangements were made through cell phone conversations and text messages. McClure wrote the operational plan and his role was to oversee the undercover operation in general. McClure was in charge of communication between the officers. Smidt was the undercover officer in the hotel room waiting to meet the juvenile. The observation and arrest team was stationed in an adjoining room. Other officers were in plain clothes and stationed both inside the hotel and outside the perimeter of the hotel for surveillance.

The juvenile arrived at the hotel and made contact with Smidt. She agreed to provide sexual services in exchange for money. After the agreement was made (at approximately 8:50 p.m.), the juvenile was arrested for prostitution. Officers outside the hotel were notified the juvenile had been arrested for prostitution and were instructed to detain the persons earlier observed in the vehicle delivering the juvenile to the hotel.

Detective Soto was the first officer to see Nyuon's Blackberry[2], which was taken out of the vehicle. Later that evening at the Law Enforcement Center, McClure looked at the contents of the Blackberry. He looked at the text messages and the recent calls. McClure estimated he looked at the contents of the Blackberry for five or six minutes. By the time McClure looked at the Blackberry, it was approximately 11:00 p.m. McClure wanted to look at the contents of the Blackberry because knew cell phones are commonly used for pimping, and by that time he knew Nyuon was under arrest for that crime. He wanted to gather information from the Blackberry before it could be erased. He put the pertinent information in his reports. McClure looked at the Blackberry just prior to the time Agent Scherer downloaded its contents.

McClure was not involved in interviewing Nyuon. Two cell phones were also seized from the juvenile at the hotel. McClure was not involved in reviewing the information from those phones or in interviewing the juvenile.

### 2. Hector Soto

Detective Soto is a member of the Sioux Falls Police Department and is currently a member of the Drug Task Force. He was involved in the undercover prostitution operation on January 25, 2012. He was stationed in the parking lot of the Hampton Inn.

Soto observed a 1992 Chevy Suburban drop off a young female. The Suburban parked in the lot and two occupants remained in the vehicle. Soto remained in radio contact with the officers inside the hotel. When contact with the juvenile had been made, Soto was instructed to maintain surveillance of the vehicle until further notice.

The Suburban moved to the parking lot of the Outback restaurant, then to a Get-n-Go convenience store. Soto received word that the juvenile had been arrested for prostitution and that

---

[2]Three different cell phones were discussed during the suppression hearing. The Blackberry is the subject of this motion. A photo of that phone was introduced into evidence as EX 1. The other two phones which were discussed were seized from the juvenile in the hotel room. Those phones were a Virgin Mobile phone and a Samsung phone. For ease of reference, throughout the remainder of this opinion the phone which is the subject of the pending motion will be referred to as the Blackberry.

3

he should make contact with the occupants the Suburban. Mr. Nyuon and another individual were in the vehicle. Soto approached the vehicle, removed the driver (Nyuon), handcuffed him and detained him. Soto informed Nyuon he was being detained for investigation of prostitution activities. At that time, Soto was not yet aware there was an outstanding traffic warrant for Mr. Nyuon.

Soto observed a bench seat in the front of the Suburban. In the middle within reach of both occupants of the front seat was an open grey purse with a glass marijuana pipe in plain view. The pipe appeared to have dark residue (consistent with marijuana) in it. Soto believed the purse probably belonged to the juvenile who had exited the vehicle at the Hampton Inn. Soto informed Nyuon the vehicle would be towed. Nyuon asked Soto to retrieve Nyuon's phone (the Blackberry) and some cash which was on the dashboard in the vehicle. Soto saw a text message on the phone. Soto did not how to operate a Blackberry; he did not do anything to display the text message.[3] The message said "do you have condoms?"[4] Soto did not give the phone to Nyuon because he knew it contained evidence related to the prostitution arrest at the hotel.

Soto notified Agent Scherer and Officer Cullen about the text message and gave the phone to one of them upon arrival at the Law Enforcement Center. The Suburban was towed pursuant to the policy of the Sioux Falls Police Department because the driver was under arrest and the Suburban was sitting in the gas pumps at the Get-n-Go. Nyuon was lodged (booked) on charges of promoting prostitution and pimping, for the possession of marijuana, possession of drug paraphernalia, and for an outstanding traffic warrant.

---

[3] Soto testified he has never owned a "smart phone."

[4] EX B shows an outgoing text message from the Blackberry to the Virgin Mobile phone (605-371-XXXX). The Virgin Mobile is one of the phones which is the subject of the search warrant--EX A-- and which was seized from the juvenile. The text was sent at 2:42 a.m. GMT on January 26, 2012 which translates to 8:42 p.m. on January 25, 2012 CST. The text message says "U gt condoms, rght?" Two minutes later there is another outgoing text from the Blackberry to the same telephone number which says "Hello?" According to McClure's testimony, this is the approximate time the juvenile was being arrested in the hotel room at the Hampton Inn.

4

### 3. Charla Aramayo

Charla Aramayo is a Special Agent with the Department of Homeland Security. She was involved in the undercover prostitution investigation operation on January 25, 2012. Aramayo was the case agent for this case. She left the hotel before the juvenile arrived, but she arrived at the Law Enforcement Center after Nyuon's arrest. Aramayo interviewed Nyuon at approximately 10:00 p.m. Nyuon discussed his involvement with the juvenile he'd driven to the Hampton Inn that evening. Based on that information, she believed Nyuon was involved in the prostitution activity. The juvenile was uncooperative, but two cell phones were seized from her. One was a Virgin Mobile phone with a 605 area code and the other was a Samsung with a 301 area code.

Aramayo did not see Nyuon's Blackberry that evening, but she discussed the contents with Agent Scherer during one of the breaks taken during her interview with Nyuon. She recalls she questioned Nyuon about the text messages. She does not remember anything about the contact information in the Blackberry.

Later in the investigation (after the juvenile had revealed the passwords) Detective Kooistra searched the two cell phones seized from the juvenile. Aramayo reviewed the contents of those two phones. One contained text messages which were exchanged between the juvenile and Nyuon on the evening of Nyuon's arrest.

### 4. Agent Craig Scherer

Scherer has been an Agent with Department Of Homeland Security for nine years. He was involved in the undercover investigation on January 25, 2012. There were three cell phones involved in this investigation. Two were taken from the juvenile and one was taken from Nyuon. The one taken from Nyuon was a Blackberry.

Detective Soto observed the text message on the screen of the Blackberry. Scherer had not looked through the contents of the Blackberry before he downloaded its contents at the Law Enforcement Center. The machine used to download the data from the Blackberry was the "Cellebrite." Scherer selected the types of data he wished to extract. Scherer connected the

Blackberry to the Cellebrite and it transferred the contents including: contacts, text messages, emails, recent calls, pictures, and videos. The time of the transfer is logged. EX 2 is the cover page of a report generated by the Cellebrite machine from the information within the Blackberry. The other pages of the report were given to the case agent. The contents of the Blackberry (EX 1) were transferred to a disc and given to Agent Aramayo.

EX B is a report that contains text messages and contact information extracted from the Blackberry. EX B does not contain all the information extracted from the Blackberry. Agent Scherer knew Nyuon was under arrest for drug paraphernalia, an outstanding warrant, and pimping. He searched the phone incident to arrest for pimping because he believed it contained evidence of the crime. Scherer has never been told to obtain a warrant before searching a phone incident to arrest.

Scherer attempted to download information from the other two phones which were seized from the juvenile on the evening of January 25 but he was unsuccessful because they were password protected. Later (the next day) Scherer obtained a search warrant for all three phones.

### 5. Emmanuel Nyuon

Nyuon testified that on the night of his arrest, he was told only that he was arrested for an outstanding traffic warrant.

### DISCUSSION

Nyuon moves for suppression of "any information which was taken or obtained by law enforcement officers from [his] cell phone which was seized following his arrest on January 25th or 26th of 2011 [sic]. While he was approached in a motor vehicle and later at the Sioux Falls Police Department, Mr. Nyuon was informed that he was under arrest for an outstanding traffic warrant. Subsequent to his arrest, state and federal law enforcement officers seized his cell phone and searched its contents prior to obtaining a warrant for the phone." *See* Doc. 102.

**Burden of Proof**

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976), but on the government to justify a warrantless search or seizure. *United States v. Bruton*, 647 F.2d 818 (8th Cir.1981). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### 1. *Arizona v. Gant*

Because Nyuon's Blackberry was not seized from his person but was in the vehicle he was driving, the analysis begins with *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). "Under *Gant*, police may search the passenger compartment of a vehicle incident to arrest only if (1) the arrestee might have access to the vehicle at the time of the search, or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *United States v. Hambrick*, 630 F.3d 742, 746 (8th Cir. 2011) (*citing Gant*, 129 S.Ct. at 1723).

Detective Soto testified unequivocally that Nyuon was handcuffed immediately upon being removed from the vehicle. Soto explained he knew nothing about Nyuon's traffic warrant at the time, but told Nyuon he was being detained for investigation of prostitution activities. Nyuon claims he was told only that he was being arrested on a traffic warrant. It is recalled from the prior suppression hearing that when Aramayo interviewed Nyuon, Aramayo did not immediately tell Nyuon he was under arrest for the sex trafficking charge, but told Nyuon at the beginning of the interview that he was being given his *Miranda* warnings because he was under arrest for the traffic warrant. The interview, however had nothing whatsoever to do with a traffic violation and was focused solely on sex trafficking. It was not until the end of the interview that Aramayo told Nyuon he would be charged with sex trafficking. *See* Report and Recommendation (Doc. 81) at 3.

Although Nyuon requested access to his Blackberry while detained at the Get-n-Go, Soto testified he did not honor the request. Because Nyuon was handcuffed there was little chance Nyuon would gain access to the Blackberry, negating the necessity of seizing the Blackberry under *Gant's* first prong.

7

Nyuon asserts that because he was told at the Get-n-Go and at the Law Enforcement Center that the reason for his arrest was an outstanding traffic warrant, no legitimate reason existed under *Gant's* second prong to seize or search his cell phone.[5] Nyuon's argument is rejected because it ignores the reality of the situation. Nyuon was one of the subjects of a surveillance/sting operation involving underage prostitution which culminated only moments earlier with the arrest of a juvenile in a hotel room. Nyuon was driving the vehicle that delivered the juvenile to the hotel. The officers followed Nyuon to the Get-N-Go gas station on the evening of January 25, 2012 not because he had an outstanding traffic warrant but because Nyuon was suspected to be involved in sex trafficking of the (by then) arrested minor. That Nyuon coincidentally had an outstanding traffic warrant which facilitated his immediate arrest for that reason did not negate the officers' reasonable belief that the vehicle would contain evidence of sex trafficking-- the crime for which the minor had been arrested, for which Nyuon was being investigated and detained, and for which his arrest was imminent. *See e.g. United States v. Grooms*, 602 F.3d 939 (8th Cir. 2010) (that defendant was arrested on outstanding warrants "is of no moment" in analysis to determine whether warrantless search of defendant's vehicle for evidence of crime under investigation and which was unrelated to outstanding warrants was reasonable under the Fourth Amendment).

Nyuon's cell phone was appropriately seized from his vehicle as part of a search for contraband or evidence of prostitution/pimping.[6] Pursuant to *Grooms*, that sex trafficking was not the reason *immediately* articulated to Nyuon for his arrest does not invalidate the search under *Gant*.

### 2. Search of the Blackberry's Contents Without a Warrant

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions. One such exception is a search incident to a lawful

---

[5] Nyuon did not cite *Gant* in his brief, but counsel argued during the evidentiary hearing that because the reason articulated to Nyuon for his arrest was unrelated to prostitution, there was no basis for the warrantless search of the Blackberry.

[6] The witnesses who testified at the evidentiary hearing referred to the state charges of prostitution/pimping. *See* SDCL 22-23-8 (pimping); SDCL 22-23-2 (procuring or promoting prostitution). The pending federal charges were filed on February 7, 2012.

8

arrest." *United States v. Brewer*, 624 F.3d 900, 905 (8th Cir. 2010) (citations omitted). A search incident to arrest, however, is an "extremely intrusive" search and is limited by the reasonableness requirement of the Fourth Amendment. *United States v. Gomez*, 807 F.Supp.2d 1134, 1145 (S.D. Fla. 2011). The Courts have widely recognized that a person has a reasonable expectation of privacy in both the call history and the text messages contained in his or her cell phone and that accessing such information without a warrant constitutes a "search" for Fourth Amendment purposes. *Id.* at 1140-41.

The Eighth Circuit has not decided whether the contents of a cell phone seized (either from a person or a vehicle) incident to arrest may be searched without a warrant.[7] The four Courts of Appeal[8] that have decided the issue have upheld warrantless cell phone searches incident to arrest. The Fifth Circuit's decision in *United States v. Finley* is most cited:

> Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person, they may also, without any additional justification, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial. The permissible scope of a search incident to lawful arrest extends to containers found on the arrestee's person.

477 F.3d 250, 260 (5th Cir. 2007). Likewise, the Fourth Circuit affirmed the warrantless search of the defendant's cell phone incident to his arrest on drug charges. *United States v. Murphy*, 552 F.3d 405 (4th Cir. January 15, 2009).

> Citing the 'manifest need . . .to preserve evidence' this Court has held on at least two prior occasions, albeit unpublished opinions, that officers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest. Similarly, the Fifth and Seventh Circuit have held that the need for the preservation of evidence justifies the retrieval of call records and text messages from a cell phone or pager without a warrant during a search incident to arrest.

*Id.* at 411.

---

[7] No post-*Gant* decision from a United States Court of Appeal has been cited to by either party nor found by the Court's independent research.

[8] *See United States v. Murphy*, 552 F.3d 405 (4th Cir. January 15, 2009); *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007); *United States v. Ortiz*, 84 F.3d 977 (7th Cir. 1996) (pager contents); *Silvan v. Briggs*, 309 Fed. Appx. 216 (10th Cir., Jan. 23, 2009).

The weight of authority from the District Courts holds cell phone contents may be searched incident to arrest without a warrant. *See e.g., United States v. Gomez*, 807 F.Supp.2d 1134, 1140-41 (S.D. Fla. 2011) *United States v. Rodriguez-Gomez*, 2010 WL 5524891 (N.D. Ga.); *United States v. Gordon*, 2012 WL 3939925 (D. Hawaii ); *United States v. Lottie*, 2007 WL 4722439 (N.D. Indiana); *United States v. Mercado-Nava*, 486 F.Supp.2d 1271 (D. Kansas 2007); *United States v. Curry*, 2008 WL 219966 (D. Maine); *United States v. Martin*, 2013 WL 55693 (E.D. Mich.); *United States v. Deans*, 549 F.Supp.2d 1085, 1094 (D. Minn. 2008)("if a cellphone is lawfully seized, officers may also search any data electronically stored in the device.");*United States v. Stringer*, 2011 WL 3847026 (W.D. Mo.); *United States v. Wurie*, 612 F.Supp.2d 104 (D. Mass. 2009) (listing cases); *United States v. Rodriguez*, 2011 WL 3924958 (S.D. Tex.) ; *United States v. Grooms*, 2011 WL 381036 (E.D. Tenn); *United States v. Urbina*, 2007 WL 4895782 (E.D. Wisconsin).[9]

In *United States v. Gomez*, 807 F.Supp.2d 1134, 1140-41 (S.D. Fla. 2011) as in this case, the defendant's cell phone was searched incident to his arrest, without a warrant. *Gomez* explained that post-*Gant*:

> [A] vehicle search incident to arrest is limited to the arrestee's reaching area unless there is reason to believe evidence of the arrest exists. Historically, and most analogous to the search at issue here, the broad grant of authority to search includes highly private articles on a person like a wallet or purse, a briefcase, a backpack or personal bag, an address book or organizer, highly private places like a person's home closet, or his groin area, or even unusual things like a person's bicycle handlebar. Not unlike these highly private items searched in similarly private areas, it is undisputed that, even post-*Gant*, a cell phone found close to the Defendant is also subject to search incident to arrest because it was seized in the arrestee's reaching area. The only material limitation in the breadth of this so called limited exception is its temporal and spatial limitation on searches incident to arrest, excusing compliance with the warrant requirement only when the search is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.

*Id.* at 1144 (punctuation altered, citations omitted). Applying the post-*Gant* search incident to arrest principles to the search of the defendant's cell phone, the *Gomez* court determined law

---

[9] Nyuon has cited no search incident to arrest cases involving cell phone contents from the United States Courts of Appeal but cited a few district court decisions which suppressed evidence obtained from cell phones in the absence of a warrant. *See United States v. Davis*, 787 F.Supp.2d 1165 (D. Oregon 2011); *United States v. Quintana*, 594 F.Supp.2d 1291, 1300 (M.D. Fla. 2009). Neither of those cases are factually similar to Nyuon's case.

10

enforcement's decision to review and record defendant's call log history was permissible and reasonable under the Fourth Amendment. *Id.* at 1145. The *Gomez* Court noted the defendant was observed transporting in his vehicle a package known to contain drugs and was also observed talking on his cell phone while transporting the package.

> [L]ike a wallet, purse, bag or cigarette case, [officers could] look through the item at the scene to see if any evidence or other contraband could be found. Moreover, because [the officer] promptly reviewed the call log history at the scene, the search was temporally and spatially connected with the arrest. It was, in short, a classic search incident to arrest.

*Id.* at 1145.

Here, the officers observed Nyuon deliver to the Hampton Inn the juvenile who was later confirmed to be the same juvenile corresponding with an undercover agent regarding prostitution. The juvenile was arrested on prostitution charges. The officers followed Nyuon's vehicle to the Get-n-Go gas station, where Nyuon was detained. Nyuon asked Detective Soto to retrieve the Blackberry from the dashboard of the vehicle. Soto observed in plain view on the screen of the Blackberry a text message referencing condoms. Soto believed the Blackberry contained evidence of prostitution, the crime for which the juvenile was already under arrest and for which Nyuon was being detained and was eventually arrested.[10] Soto did not know how to operate the Blackberry but delivered it to the officers at the Law Enforcement Center, where Nyuon was transported, questioned and arrested. McCullen looked through the contents of the Blackberry at the Law Enforcement Center immediately before Scherer used the Cellebrite machine to download its contents. As in *Gomez*, the officers' decision to search Nyuon's Blackberry incident to his arrest and without a warrant was permissible and reasonable under the Fourth Amendment.[11]

---

[10]McClure and Scherer also testified they believed the Blackberry contained evidence of the crime.

[11]The undersigned parts ways to some extent with the analysis in *Gomez*. *Gomez* would allow an on-scene perusal of the cell phone contents but would not allow a similar perusal or more in depth search at the police station. Such limitations are at odds with both Eighth Circuit and Supreme Court precedent. "It is plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *United States v. Hambrick*, 630 F.3d 742, 748 (8th Cir. 2011) *citing United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

11

### 3. Inevitable Discovery Doctrine

If Nyuon's Blackberry had not been searched incident to his arrest, its contents would have been inevitably discovered. The inevitable discovery doctrine applies

> [W]hen the government proves by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation. In this analysis, it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred.

*United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (citations omitted). The evidence at the hearing established by a preponderance that in addition to Nyuon's Blackberry, two cell phones were seized from the juvenile who was arrested on the evening of January 25, 2012. Those two cell phones were not searched on the evening of January 25, 2012 because they were password protected. On January 27, 2012, Scherer obtained a warrant to search those two phones (in addition to the Blackberry). EX A. The search of the Virgin Mobile phone (605-371-xxxx) revealed incoming and outgoing text messages exchanged with Nyuon's Blackberry on the day of the sting operation.[12] Based on the warranted search of the juvenile's Virgin Mobile phone, therefore, it was inevitable that the contents of Nyuon's Blackberry would likewise have been discovered by lawful means even in if it had not been searched immediately upon Nyuon's arrest. Put another way, once the content of the Virgin Mobil phone was discovered through the warranted search, it was "reasonably likely" that Scherer would have requested and obtained a warrant for the contents of Nyuon's Blackberry–even if the contents were not already known from the earlier, warrantless search. *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012). For this reason as well, Nyuon's Motion should be denied.

### CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant's Motion to Suppress Cell Phone Data (Doc. 102) be DENIED.

---

[12]Recall that EX B (the printout of the texts from Nyuon's Blackberry) reveals the outgoing text sent from the Blackberry to the Virgin Mobile phone moments before the juvenile's arrest–most likely the text which was displayed on Nyuon's Blackberry screen when Soto's retrieved it from Nyuon's vehicle--"u gt condoms rght?"

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 1 day of ~~February~~ March, 2013.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk
By_____, Deputy
SEAL)