UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EMMANUEL WILLIAM NYUON,<br><br>Defendant. | 4:12-CR-40017-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Emmanuel William Nyuon, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 416. Plaintiff, the United States of America, opposes the motion. Docket 420. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On April 5, 2013, Nyuon was found guilty of sex trafficking of children by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1) and conspiracy to engage in sex trafficking of a child in violation of 18 U.S.C. § 1591(a)(2). Docket 196; Docket 221 at 1. On July 15, 2013, the court sentenced Nyuon to 360 months on both counts, with all counts running concurrently, followed by 10 years of supervised release. Docket 219 at 2; Docket 221 at 2-3. Nyuon is eligible for home confinement on February 17, 2037, and his current anticipated release date is August 17, 2037. Docket 419 at 830.

Nyuon is incarcerated at Federal Correctional Institution Fairton in

Fairton, New Jersey. Docket 416 at 4; Docket 419 at 801. As of November 25, 2020, there are currently 8 active COVID-19 cases among FCI Fairton's inmates and staff, zero deaths from COVID-19, and 96 inmates have recovered from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited on Nov. 25, 2020).

Nyuon is 41 years old. Docket 419 at 1. He claims he suffers from asthma, chronic kidney disease, high blood pressure, PTSD, and depression. Docket 416 at 4. Nyuon was prescribed lisinopril to control his hypertension and three inhalers to control his asthma. *See, e.g.,* Docket 419 at 336, 540, 627.

On July 12, 2020, Nyuon submitted a Request for Administrative Remedy form, requesting compassionate release. Docket 416-1 at 2. On August 14, 2020, Nyuon completed a second Request for Administrative Remedy, asking for compassionate release. Docket 426-1 at 2. Nyuon submitted a third Request for Administrative Remedy regarding compassionate release on September 25, 2020. *Id.* at 3. The warden received one of Nyuon's requests for Administrative Remedy on October 16, 2020 and denied his request on October 26, 2020. *Id.* at 4. On August 25, 2020, Nyuon filed a pro se motion with the court for relief under the First Step Act. Docket 416.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not

2

modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.
§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C.
§ 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603.
Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C.
§ 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Nyuon argues that the risk posed by the global COVID-19 pandemic, together with his adverse health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 416 at 1, 3-4; Docket 426 at 6. Nyuon requests a sentence of time served. Docket 416 at 1.

3

## I.     Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Nyuon submitted requests for compassionate release on July 12, 2020, August 14, 2020, and September 25, 2020. The warden received one of Nyuon's requests on October 16, 2020. The 30-day period expired on November 16, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Nyuon's motion is ripe for review on the merits.

## II.    Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing

4

Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions

"consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Nyuon has failed to show that his medical conditions rise to extraordinary and compelling circumstances.

Nyuon contends that his circumstances warrant compassionate release under 18 U.S.C. § 3852(c)(1)(A). Docket 416 at 1, 3-4. Nyuon argues that his PTSD, depression, asthma, and chronic kidney disease puts him at high-risk of severe illness if he contracts COVID-19. *Id.* at 4. Nyuon did not articulate which category his circumstances fall under within the extraordinary and compelling reasons provision. Thus, the court will analyze his circumstances under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), smoking, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Nov. 2, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, liver disease, overweight, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Nyuon's medical conditions include chronic kidney disease, asthma, hypertension, and anxiety. The CDC has identified that people who suffer from chronic kidney disease are at an increased risk of severe illness from COVID-19. According to Nyuon's BOP medical records, he suffers from stage II chronic kidney disease. Docket 419 at 788. His condition, however, is classified as "mild" and the defendant is currently in remission. *Id.*

Nyuon's asthma is listed as a medical condition that *might* increase the risk of severe illness from COVID-19. His medical records do reflect a history of asthma. Dockets 419 at 31, 171, 540. Nyuon's condition was last described as "[l]ikely the feeling is more closely associated with anxiety than true asthma." *Id.* at 746. Nonetheless, Nyuon was provided with a prescription for an inhaler. *Id.* Nyuon, however, has chosen not to refill his inhaler. *Id.* at 546, 745, 746, 784; *see United States v. Muhlenhardt*, 2020 WL 4697112, at *4 (D. Minn. Aug. 13, 2020) ("[D]espite the risk [the defendant's] asthma can present, the Court agrees with the findings of several courts that this risk alone is insufficient to warrant release."); *United States v. Slone*, 2020 WL 3542196, at *6 (E.D. Pa. June 30, 2020) ("[A]n incarcerated person arguing extraordinary and compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release.").

Nyuon's hypertension is listed as a medical condition that *might* increase

8

the risk of severe illness from COVID-19. His hypertension is controlled with medication. Docket 419 at 642. Nyuon's other medical conditions—prediabetes, PTSD, depression—are not listed as a medical condition that might increase or increase the risk of severe illness from COVID-19. Nyuon has not identified how his medical conditions prevent him from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

While some of these chronic conditions may put Nyuon at a higher risk of severe illness if he contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest he has not been able to manage these conditions while in the prison environment. Nyuon is receiving medical attention and treatment for these conditions, which all appear to be stable or controlled. *See* Docket 419 at 1, 16, 20, 31, 171, 536, 540, 546, 627, 731. "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (citation omitted). Thus, the court finds that Nyuon does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

The court believes that Nyuon's medical conditions are appropriately managed at FCI Fairton, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Nyuon's health conditions, such ailments, coupled with the present conditions at FCI Fairton, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming Nyuon's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Nyuon was found guilty of sex trafficking of children or by force, fraud, or coercion and conspiracy to engage in sex trafficking of a child. Docket 196; Docket 221 at 1. On numerous occasions, defendant would arrange for the victim, who was between the age of 13 and 14 at the time of the offense, to perform commercial sex acts over a period of two months. PSR ¶¶ 8, 14-15, 17-18, 23. During this time, the victim performed one sex act per day at hotel rooms rented by Nyuon. *Id.* ¶¶ 17-18, 33. The victim would give the money she received from the sex act to Nyuon, and he would pay for the hotel, buy her food, and give her marijuana. *Id.* ¶¶ 17-18. The victim contacted several sexually transmitted diseases while performing these sex acts, which resulted in a pelvic infection and a four-day hospital stay. *Id.* ¶¶ 20, 25.  Nyuon's total

10

offense level was 41, and he was in a criminal history category VI. *Id.* ¶¶ 40, 78. Nyuon's guideline range was 360 months to life. *Id.* ¶ 113. The offense carried a mandatory minimum of 120 months custody. *Id.* ¶ 112. When sentencing Nyuon, the court factored in his family history, as well as sentences imposed in similar crimes, and sentenced him to the bottom end of his guideline range to 360 months in custody. Docket 219 at 2; Docket 221 at 2; Docket 302 at 70-71. Nyuon has only served approximately 28.6% of his full term and 33.6% of his statutory term. Docket 419 at 831. Therefore, the court finds that Nyuon's sentence of 360 months in custody with 10 years of supervised release continues to be appropriate for the seriousness of the crimes to which he was found guilty.

## CONCLUSION

Nyuon has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 416) is denied.

Dated November 30, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE